The next case for argument this morning is 17-1164 Northern District of Iowa Eugene Nelson et al. v. Charles City Community School District Mr. Preeby, when you are prepared, you may proceed Mr. Preeby, you may proceed Mr. Preeby, counsel When a newly found individual is effectively excluded, functionally denied access, this is a problem under the Rehabilitation Act. On the other hand, if a parent requests a modification to an existing IEP, Individualized Education Program, but is met with resistance in that request, there you have a budding claim that the student has been denied FAPE, Free Appropriate Public Education. This case requires us to apply the standard that has been given to us by the U.S. Supreme Court in the Frye case, and in so doing, we see that our case is more like the first scenario, a denial of access. And so we're asking this to the District Court's grand summary judgment and find that our clients, the Nelsons, were not required to exhaust any administrative remedies under the IDEA. In my time this morning, I'd like to discuss two points. First, under Frye, the crux of this case is not IDEA relief, so exhaustion is not required. Second, it would simply be futile to even have the Nelsons attempt to exhaust administrative remedies, so certainly that's not required under established law. As to the first point, the Frye case has given us a few different standards or questions or clues that we can use to determine whether or not a case is seeking FAPE relief, or whether it's not seeking FAPE relief, it's seeking something else, and is thereby exempted from the exhaustion requirements under the IDEA. The crucial test set out by the Frye Court at page 755 is what is the crux or the gravamen of the plaintiff's complaint? In this case, our complaint is set out in Appendix 1-7. It's a suit for money damages. There is no reference in the complaint to FAPE. There is no request in the complaint for relief that's available under FAPE. And it's important to note that the Frye Court identifies the test here, what is the crux of the complaint, puts front and center the plaintiff's complaint, so that the plaintiff is essentially the master of his or her claim. And here we have clearly identified, this is a Rehabilitation Act case about denial of access to a public institution. Now, the Frye decision gives us a couple of other clues, as the Justice identified. One of those clues is, could the plaintiff have brought essentially the same claim if the public facility that was not a school? And this is set out in Frye at page 756. So when we take that standard into consideration in this case, we apply that clue, it instructs again that this is not a FAPE case. You can imagine if the plaintiff here, C.N., the child, tried to obtain services from any other public institution, but was denied those services because of her medical conditions. In this case, the medical conditions are polycystic ovarian syndrome, PCOS, and depression. So you can imagine at this other public institution, if those conditions created access problems, but nonetheless the employees at the institution had come together and worked out a plan or a compromise to allow access for C.N., only to have the highest administrative officer reject the compromise, we would have a very similar claim that could also lie, regardless of whether it's a school or another public institution. The second clue that's set out in the Frye case, could an adult at the school, say an employee or a visitor, have pressed essentially the same grievance? And again, that just changes whether we're talking about a student or an adult. And again, that clue instructs us the Nelson's case is not a FAPE case. Imagine if an adult employee of the school required an accommodation for her PCOS and depression. You could imagine, for example, that the employee needed to work from home and so needed remote access to the school's problem was solved by a compromise of the school's employees, but then later rejected with the rug pulled out from under this employee by the highest administrative officer. Once again, we're looking at a very similar case where a non-FAPE claim would lie. Among the other clues in the Frye decision that lead us to this outcome, they ask us to look at the history of the case. Did the plaintiff previously invoke the IDEA's formal procedures and then switch midstream in favor of something else? Well, the simple answer to that is no. The plaintiffs in this case never pursued an IDEA claim at any point. And that's sensible because the facts of the case show that neither party ever viewed this as an IDEA type of framework. If you look briefly at the... If I recall correctly, the facts of the development of the case were that C.N. just had excessive absences, or at least that was the principal problem, and that those absences came from her physical condition, but that there was never apparently any working out of an educational substitute for her regular attendance. I think that's correct. Was there any communication between parent and school about, okay, if she can't come to school regularly, how do we provide her education? Not exactly. Unfortunately, no. How the school treated this scenario was as a quasi-criminal truancy issue, and eventually, in April, they contacted the Floyd County attorney and sent a sheriff out to haul her into school. They never treated this as a case where educational remedies could apply. In the midst of the multiple truancy mediations, the idea came up that C.N. could attend an online school instead. And so the thrust was that the school would facilitate open enrollment for C.N. so that she could attend one of a couple different online schools. And if you look at the appendix, page 115 to 116, you can see that that's exactly what the school did. That was the idea of how to deal with this. But then it fell through. It fell through. What made it infeasible for her to attain education through the school's online resource? Well, she was seeking open enrollment to go all online. And although they had basically worked out this deal for some reason, for reasons that aren't totally clear, the school district denied the open enrollment application for the family. And ALJ had looked at this when they appealed that denial of open enrollment and said, this was basically the school district pulling the rug out from underneath the family after we'd worked so hard to come up with this solution. These are not FAPE solutions. These are not IEP or IDEA framework solutions. This was what the ALJ called bad faith. And I think that's what we have here. What about the fact that the complaint, well, let me put it this way, is the gravamen of the complaint that she missed out on important educational opportunities because of this action by the school district. And if so, isn't that really complaining about a FAPE? No, it's not the crux of the complaint. It's true that there was an educational consequence to what happened. But a lot like the wheelchair ramp example that the court gave us in Frye, we acknowledge this is essentially an access issue that has educational consequences. Do you think the ability to enroll online is like having a wheelchair ramp? Do you think that's a good analogy? It absolutely is an access problem. And if you want to get a flavor of the symptoms and the effects of these medical conditions, take a look at the appendix, page 184, to see what happened. And take a look at the missed school days, and you'll acknowledge this was an access problem. Depression, heavy flow days, severe cramping, essentially a hormonal disorder that caused her to be taken out of activities that any normal adolescent would participate in. Who initiated contact to try to arrive at some alternative to regular attendance? Well, the school started with the truancy referral to the county attorney, and then during the truancy mediation, online school came up. I think the record shows in that internal memo that the school was pressing this. So for all these reasons, we're seeing this is definitely not a FAPE case. It's a Rehabilitation Act case. And to the second point, just briefly here, we also know that exhaustion would be futile for the Nelsons. There is a hypothetical sent out at page 38 of the brief that talks about what the Nelsons would actually do if they stood in front of an IDEA officer or an ALJ to talk about certain remedies they could get. Obviously, they cannot get compensatory damages, emotional distress damages. And by the time this complaint was filed, the only educational remedy that the Nelsons ever wanted, which was open enrollment, let me out of this school so I can attend online, was already obtained by the ALJ's ruling in the Department of Education. That's not what this case is about. And I think you add on top of that, if the Nelsons had personally... Just so I'm clear, how was the proceeding before the ALJ that you just mentioned different from the exhaustion that would be required here? Well, what I'm saying is exhaustion would culminate in a hearing before an ALJ about proposed IDEA remedies. And naturally, an ALJ couldn't grant compensatory damages, things like that. Right. But how did you end up before the other ALJ who you say required the open enrollment? Because the open enrollment application was denied in an arbitrary way. And that was appealed, ultimately landed on the Department of Education. So it was an appeal from the denial of the open enrollment application that led you there. Exactly. That's different than if you had proceeded with exhaustion under the IDEA. Yes, it is a different procedure. Although there's a hint of the Musgrat case, again, where the plaintiffs had done some back and forth with the administration, and so the court found further proceedings would be futile. So there's a hint of that as well. So with that, I will sit down and reserve the rest of my time for rebuttal. Thank you. Thank you, Mr. Preeb. Ms. Hanson? Good morning. May it please the court, counsel? I'm Beth Hanson, and it's my great pleasure to represent the Charles City Community School District, one of 300-plus public school districts in the state of Iowa. I'm here today to talk about a case that is before you that really is a case that involves a failure to exhaust administrative remedies under the IDEA. This is not a new topic for the Eighth Circuit Court of Appeals, as this matter has been before the court even before the Frye case, which is a Supreme Court case, and before a case, J.M. v. Howell, which addressed this same topic after the Frye case. The Frye case came before the Supreme Court on a case involving a child who needed a service dog. That child was a kindergartner and wished to bring the dog to school because she had certain limitations in terms of mobility. This service dog would pick objects up, would provide stability for the child as she moved around the building. The school district in that case objected to the use of the service dog in the building because they said that a one-on-one aid could provide that same service for the child, rendering the dog superfluous. In other words, that one-on-one aid was written into the individual educational plan and was provided as a service as a part of the free, appropriate public education. The parents, and rightly so, said that the child was entitled to bring the dog to school under the Rehabilitation Act, under a different law, because what the child was being provided with that dog was different. It was not an educational benefit. It was a mobility issue, moving from place to place. So the court in that case, and rightly so, recognized the distinction between an educational benefit and this mobility issue in terms of that case. Counsel, in this case, doesn't it make a difference that this case arises from the school taking action on truancy, and then the matter proceeding through the discussion on how to provide a get-the-child-educated-without-regular-school-attendance-at-the-physical-location, and that the work through, through an ALJ and ultimately through the State Board of Education, is all the process that would have been required in administrative review of the actual disputed question. No IDE claim was made. No, there was never an IEP produced or discussed. This case just doesn't seem to neatly fit into the distinction between rehab cases and, or handicapped child cases and the IDEA. I do, I disagree with you, Your Honor. The reason being is this, because the IDEA is an extensive scheme. The, if you look under 34 CFR in Section 300 and all of the subsections, which are codified or in Iowa, it's 281 Iowa Administrative Code, Chapter 41, and all of the subsections, it talks about the responsibility of the IEP team to discuss the development of the program, which talks about the educational plan that is developed. They first talk about the education, and then they talk about the location of the education, based on the unique disabilities of the child, which can be both mental and physical. Well, in this case, what else was there to do than what was done? We don't know, Your Honor, because that team never met. There's all kinds of possibilities that might have been developed. There could have been dual enrollment. They could have modified the length of the day. They could have provided home... The school suggests IDEA as the framework? We never got to that point, Your Honor. The school started with going to the home. That didn't work. They brought in the guidance counselor, the school nurse. They tried mediation at the county attorney's level. They worked through that. The school superintendent suggested using the online instruction through the school. The parents rejected that. In fact, within the appendix, you'll find a letter where the school says, the counselor's going to contact you to talk about setting up the online instruction. By that point, we were into the appeal to the administrative law judge under the open enrollment, at which point in time, the family went to and won the open enrollment appeal. The family never contacted the school to come back to talk about the option with the school and never went through the process to get into online enrollment with another school district. I don't know what else we could have done, Your Honor, but the interactive process and the IDEA process was always available to the school. The school reached... Well, it sounds like that would provide for you a good defense in the lawsuit. Absolutely. But it doesn't necessarily sound like a basis for requiring some additional feudal administrative step with the school district. It seems as if both sides did all you could do between the two of you and you just didn't resolve it. The matter went up through the ALJ and to the school board. But it doesn't relieve the family the requirement to exhaust the IDEA before filing suit. But why doesn't futility exempt or at least make it unfeasible to put that responsibility there when everything that could have been done meaningfully was tried? Your Honor, I respectfully disagree that I don't see the facts in this case that it was infeasible for the family to continue to work through the system. The IDEA is intended to get children into school. Time is of the essence. That's why it's so important that families use the IDEA at the first possible moment that we continue to get these children back into school. We are now four years after the fact. If the IDEA had been used and if you look at 281 Iowa Administrative Code 41, it provides for informal meetings. It provides for resolution facilitation. It provides for mediation. It provides for state-based complaints. It provides for due process complaints. And I have very dry mouth, excuse me. Now, on the question about futility, when would those things have happened in the course of these events if the plaintiff had pursued exhaustion? They could have all happened within approximately 60 days from start to finish. But I mean, at what point in time during this back and forth with the school and the Department of Education? From the time the parent came in and said, I need, my daughter has a disability, and I want my daughter to have this education. I mean, the process was started when the family came in and said, my daughter needs this education. That letter in the fall, in the fall started that process. And how long after that was it when the Department of Education overturned the EDEA rule? That was, the Department of Education hearing was in December. So fall to December. And that was a different administrative process. I understand, but I'm just trying to understand. But the family, the school district started trying to get her back to school in the spring. And keep in mind, if you read the footnote in the Department of Education's ruling on the hearing on the open enrollment, there's a footnote that said the school district never had any medical records at any time other than some excuses where they said she couldn't come to school. The first time medical records were provided to the school district were in that hearing in December of 2014. We had some excuses that said she had depression, and the mother said she had depression and she had polycystic ovarian syndrome, but that was- It doesn't sound like the school was treating this as an IDEA problem. We were treating this, we were treating this as a truancy issue. We knew she wasn't in school. But we can't be mind readers, your honor. The family can invoke IDEA at any time, any family can invoke that. All they have to say is my child has a disability, I have a problem, we have problems, we need to get this child in school, and we have to move. We can identify, we can evaluate, we can place, we can convene meetings with the appropriate personnel. We work as a team, that's the beauty of this law. There are very strict limitations on the times for evaluations and for meetings. There are very strict time limitations on making progress and developing these plans, that's the beauty of this law. Do you want to respond to the argument about whether the gravamen of this complaint really is? Yes, I do. IDEA versus Rehab Act? Yes. In the appendix, at page 47 of the appendix, in page on paragraph 29 of the original complaint. The original complaint, which is a starting point for the evaluation. It says in the final sentence that as a result of the actions of the school, the plaintiff was missing out on important educational opportunities that cannot now be recovered. That's the first clue that this really is an IDEA case. And on paragraph 36 of the complaint, the plaintiff says this action seeks money damages. Damages are not available under the Individual with Disabilities Act. The plaintiffs are therefore relieved of any requirement to exhaust any administrative remedy as stated in 20 U.S.C. 1415L. And then again, that's appendix page 48. How does that help you, or what's the significance of that? And that's because the case law is clear that the fact that money damages are not allowed under IDEA is not the basis for dismissing the requirement for failing to exhaust the IDEA. That's an argument that plaintiffs has made over and over and over again, and that is insufficient to support not exhausting the administrative remedies. And then finally, in the appendix page 185, in answers to interrogatory number 26, under sub answer two, the last sentence in two, CN has a right to an education. And again, in appendix page 212, which was in the plaintiff's motion for summary judgment under sub four, in the second sentence, this effectively denied CN the opportunity for a free and appropriate education because the defendant's unable to attend either the Iowa Connections Academy or the Iowa Virtual Academy. Over and over and over again, the plaintiff says, you have denied me my education by your actions. Over and over and over again, the plaintiff says that this is a rehabilitation act case, and then claims that because of our actions, we have denied her a free appropriate public education. I see my time is almost up, unless you have other questions, thank you for your time. Thank you, Ms. Hanson. Attorney Hanson made a statement in her argument. I don't know what else we could have done from the school's position. Well, the fact is, what they could have done is honor the open enrollment application, rather than pulling the rug out from under the student. And so, I think it's the school blowing both hot and cold on this issue, to say that we need to have IDEA procedure for procedure's sake. When at the time it was happening, neither party viewed this as an IDEA case. And I have a little checklist of items, I just, of undisputed facts that establish you really have to shoehorn the facts of this case to get it under the IDEA framework. One, the student did not have an IEP. Two, the family did not request special education services. Three, the student did not receive and the school did not provide special education services at any time. Next, the school did not even identify CN as a student who would benefit from special education services or an IEP. And you can be sure if the school had so identified, they had an obligation to act on that under Iowa administrative law. The history of the case shows that the parents didn't consider this a fake claim. The plaintiff's complaint alleges a denial of access, and that's what this case is. And the plaintiff's complaint does not request any remedies that the IDEA could provide. I don't know how you can put all of those facts into the IDEA framework. What about your brief that argues they effectively denied CN the opportunity for a free and appropriate education? That's true, and we don't deny that, but I think there's two responses. The first is, the Fri Court told us, avoid a magic words formula. And I see my time is up, may I? Yes, please. Thank you. Avoid a magic words analysis. If the term fape comes up, that doesn't exclude your case or make a decision one way or the other. It's not determinative. And the other is, you're asking me what the crux of the case is and I have told you, it's an access case, it's a Rehabilitation Act case about a student with severe medical conditions that kept her out of school. And when we had a solution, it was pulled away. So to insist on procedure for procedure's sake, it's futile, and that's not what this case is about. Thank you. Thank you, Mr. Preet. Court thanks both counsel for the valuable argument you provided to the court this morning, the briefing you submitted. We'll take the case under advisement. You may be excused.